GARDEN, JUDGE:
By contract dated September 23, 1969, entered into by the respondent and claimant, the latter contracted to construct a portion of 1-79 in Braxton County and known as Project 1-79-2 (32) 64. For use on the project, the claimant in December, 1970, purchased 52,420 tons of crushed aggregate from Kenton Meadows Company, Inc., at a cost of $104,840.00. The claimant in turn on December 21,1970, invoiced the respondent for this aggregate and shortly thereafter the respondent paid claimant for this quantity of aggregate. This aggregate, with cement to be added later, was to be used on the project as cement treated base course. When this aggregate was purchased by respondent, it was not on the project site but was a part of Kenton Meadows’ stockpile of aggregate located in Braxton County.
By May, 1971, the respondent through sophisticated testing had determined that the aggregate was deleterious and as such did not meet specification. The testing had revealed that the aggregate contained shale in excess of 5% and that in accordance with the specifications was not usable on the project. Twenty-three tests were made of the aggregate from samples taken from Kenton Meadows’ stockpile, and these tests confirmed earlier testing that had been performed by respondent as the aggregate passed over a conveyor belt at the crusher, that the aggregate was deleterious. Conferences were held between officials of claimant and respondent in an effort to determine what could be done with the aggregate in order to bring it up to specifications. It was determined that if an additional 1.5% of cement was added to the aggregate, that the same would then have sufficient strength to be usable on the project.
*298 As a result the respondent and the claimant entered into a written agreement on May 27, 1971, and which was entitled Supplemental Agreement No. 7, Change Order No. 14. This agreement which was introduced into evidence authorized the additional cement and in describing the reason for the supplemental agreement, the following language was set forth in the agreement:
“This crushed aggregate available for use in Cement Treated Aggregate Base Course has been repeatedly sampled and tested, and was found to have a higher shale content than allowed. In order to use this material, an additional 1.5% of Portland Cement is needed to produce a quality finished product. The addition of 1.5% cement above the present 4 1/2% to 5 112% band will be added by the contractor at no extra cost to the Commission.” (Emphasis supplied.)
The claimant thus added the additional 1.5% of cement and the cement treated aggregate base course was used on the project. The claimant computed that it incurred an expense of $11,437.40 in adding this additional cement to the aggregate, and being prohibited from charging this amount to respondent by reason of the language of the supplemental agreement, it recouped this expense by back charging it to Kenton Meadows.
While it would appear from the style of the claim that the same was filed by S. J. Groves & Sons Company as claimant, it was admitted at the hearing by counsel for the claimant that the claim was in reality an attempt on the part of Kenton Meadows to recover in the name of S. J. Groves & Sons Company the $11,437.40 which it had been back charged. They (Kenton Meadows) assert, and quite correctly we believe, that they could not file suit directly against respondent by reason of lack of privity of contract. While Kenton Meadows cannot file a direct claim against respondent in its own name, S. J. Groves & Sons Company could have assigned its chose in action to Kenton Meadows and the latter could have proceeded against respondent as an assignee. This was not done, but even if it had, we believe the language of the supplemental agreement would have constituted a complete defense.
Kenton Meadows of course is of the opinion that the sampling from their stockpile was done improperly and that the samples were taken from unrepresentative parts of the stockpile and as such did not represent the true quality of the aggregate in the stockpile. We believe that the issue of the sampling, the testing and *299 the back charging of the expense of the additional cement are truly issues between S. J. Groves & Sons Company and Kenton Meadows and that the proper forum for the resolution of this issue is in a State court in a civil action brought by Kenton Meadows against S. J. Groves & Sons Company. For the reasons expressed above, we will make no award.
Claim disallowed.